IN THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

                Plaintiff,

vs.                                          CASE NO. CR 07-157-SLR

PHILIP GRAHAM,

                Defendant.

---

MOTION TO DISMISS FOR FAIR TRIAL VIOLATION

PHILIP GRAHAM respectfully requests this court dismiss those counts of the indictment reliant upon 18 U.S.C. 2252A as he cannot obtain a Fair Trial as to the charges related to those counts for the reasons set forth in the attached brief.

                                                      _____/s/_____

                                               Clayton A. Sweeney, Jr.

                                               DE Bar No. 3359
                                             PO Box 55441
                                             Philadelphia PA 19127-5440

                                             (215) 509-1012
                                             (215) 509-1013 (f)
                                             clayt2@verizon.net

**PENDING ADMISSION**
**PRO HAEC VICE**
Dean Boland 0065693
18123 Sloane Avenue
Lakewood, Ohio 44107
216-529-9371 ph
866-455-1267 fax
dean@deanboland.com

<u>LAW AND EXPLANATION</u>

<u>FAIR TRIAL STANDARD</u>

The Sixth Amendment right to counsel protects "the fundamental right to a fair trial." <u>Strickland v. Washington</u> (1984), 466 U.S. 668. "A fair trial is one in which evidence subject to adversarial testing is presented to an impartial tribunal for resolution of issues defined in advance of the proceeding." (Id).

"Whatever disagreement there may be as to the scope of the phrase "due process of law" there can be no doubt that it embraces the fundamental conception of a fair trial, with opportunity to be heard." U.S. Supreme Court Justice Oliver Wendell Holmes in <u>Frank v Mangum</u>, 237 U.S. 309, 347 (1915).

"It is of vital importance that the litigant should believe that he will have a fair trial." <u>State ex rel. Turner v. Marshall</u> (1931), 123 Ohio St. 586. "[J]ustice must satisfy the appearance of justice." <u>Offutt v. United States</u> [1954], 348 U.S. 11.

<u>What 18 U.S.C. 2252A prohibits</u>

18 U.S.C. 2252A **does not** prohibit possession of contraband images. It prohibits **knowing** possession of such items. (See 18 U.S.C. 2252A).

Possession of images that merely "appear to be" contraband by visual examination is constitutionally protected. (<u>Ashcroft v. Free Speech Coalition</u> 535 U.S. 234, 122 S.Ct. 1389). The more realistic looking the "appears to be" images the more deserving of First Amendment protection. (Id. at 1404).

The possession of images that merely "appear to be" contraband by visual examination **and** depict an actual minor engaged in the conduct depicted is not constitutionally protected. That possession is only illegal, however, if the possessor **knows** the item depicts an actual minor.

2

(18 U.S.C. 2252A).

In preparing its case, the government is permitted to perform the following tasks, among others, in preparation for trial:

1.  Research the origin of the indicted items on the Internet and elsewhere
2.  Attempt to ascertain the identity of the individuals allegedly depicted in the indicted items
3.  Download and analyze the information on any website that currently hosts a copy of the indicted items
4.  Identify, locate and interview, if possible, the photographer of the indicted item
5.  Identify, locate and interview, if possible, the person whose digital image manipulation work resulted in the indicted item
6.  Visit all websites that are contained in the website history found on Graham's computer to gather evidence, if any, from those locations.
7.  To attempt to rebut defense arguments that the indicted items do not depict actual minors engaged in the conduct depicted, it can prepare and present digital imaging exhibits to argue that current technology does not permit the creation of images like the indicted items
8.  To attempt to rebut defense arguments that Graham lacked the capacity to know the indicted items were not constitutionally protected, it can submit the indicted items to an expert witness for analysis and testimony regarding the capacity of average citizens to make that determination.

These are just some of the tasks the government is entitled to perform in preparation of its case and rebuttal of the anticipated defense case or arguments in pre-trial hearings. Whether it **will perform** any or all of the above tasks is irrelevant to Graham's argument here and his Fair Trial rights. The government has the right to fully investigate its case. Graham has the same right as a general proposition supporting a Fair Trial. He has the right to perform all of the above tasks and more not disclosed in this pleading in order to gather potentially relevant evidence about the indicted items, prepare necessary expert witnesses and necessary digital image exhibits needed for both pre-trial hearings and for trial.

While the government in this case will perform, or has the option to perform, a range of evidence gathering tasks in preparation for hearings and trial, defense counsel is unable to perform any of those tasks as they are prohibited by 18 U.S.C. 2252A *only for defense counsel*

*and defense experts.*

In state and federal child pornography prosecutions, *government* digital imaging experts have testified in both pre-trial hearings and at trial. (See Figure 1 and <u>United States v. Hill</u>, Case No. 4:04CR57 (Eastern District of Texas); <u>United States v. Watzman</u>, Docket No. 03 CR 1032 3, (Eastern Division of Illinois); <u>United States v. Fuller</u>, 77 Fed. Appx. 371 (6th Cir. 2003)). The government has also provided digital image exhibits to support their arguments and witness testimony in those cases. In federal child pornography prosecutions *defense* digital imaging experts have testified in both pre-trial hearings and at trial. (See <u>Hill</u> and <u>Watzman</u>). Those defense counsel and experts provided digital image exhibits supporting their testimony. In state cases, courts and juries rely upon defense digital imaging testimony and digital image exhibits. (Figure 1)

State courts in Pennsylvania permit presentation of digital imaging expert testimony and related digital image exhibits. (See Exhibit 1, PA Protective Order). The court in <u>Stewart</u> also found those tasks necessary to provide a fair trial for a Pennsylvania citizen facing child pornography possession charges. (Id). Pennsylvania's child pornography statutes contain a specific exception for defense related conduct for "judicial purposes." (18 P.A. C.S.A. § 6312(f)). 18 U.S.C. 2252A, et seq. has no such exception.

Under federal law, the conduct authorized by the court in <u>Stewart</u> and all other cases listed in Figure 1 violates 18 U.S.C. 2252A *only if* performed by defense counsel or its experts even in preparation for this trial. The tasks constitute violations of federal child pornography statutes related to possession, transportation, reproduction and receiving.

<u>Counsel's inability to properly prepare a defense</u>

It was Graham's intention to offer digital imaging expert witness testimony and digital

image exhibits to challenge the government's assertion the seized images were violative of the statute.  It was his intention to have his counsel use such digital image exhibits in the cross examination of some of the government's witnesses.  Such impeachment exhibits are not required to be provided to the government in discovery.  It was his intention to use other digital image exhibits as exhibits to various pre-trial motions and related hearings.  It was his intention to fully investigate the source of these images on the Internet and elsewhere.  To be efficient, it was his intention to have his counsel and experts perform all the same tasks the government performed (or has the option to perform) in preparing its case.

It is presumed one or more government witnesses will claim the indicted images depict an actual minor engaged in the conduct depicted in the image.  In fact, the government must insist this is true to avoid dismissal of this case.  To counter that testimony and government argument, Graham needs to produce digital image exhibits demonstrating the indistinguishability of illegal actual child pornography and legal, constitutionally protected, apparent child pornography.  The creation of that apparent child pornography court exhibit, however, is prohibited – and only so when produced and used by defense counsel and its experts.  The government's evidence in this case, apparent child pornography, are items it will claim are real child pornography.  It has no restriction on its ability to copy those items, distribute them to agents, counsel and experts and regularly confer on them and refer to them preparing for trial.  Defense counsel and Graham are completely deprived of that significant advantage.

The government regularly chooses to exercise its enforcement discretion to the benefit of state law enforcement and *private citizens* who are hired by the state to assist them in child pornography cases.  For example, in several Ohio child pornography cases, state prosecutors have hired Dr. Hany Farid.  (See Ohio v. Heilman, 2003 CRB 458; Ohio v. Brady, exhibit 2 and

Ohio v. Harrison, 2005-CR-10-099).  In each of those cases, the state prosecutors transported

alleged child pornography in interstate commerce to Farid.  (A violation of 18 U.S.C. 2252A for

which there is no exception).  Farid received the alleged child pornography images in interstate

commerce.  (Another violation of 18 U.S.C. 2252A).  He possessed the alleged child

pornography in those cases during his review and analysis of it to prepare his expert report.  (A

third violation of 18 U.S.C. 2252A).  Farid and the state of Ohio violated federal law on no less

than nine occasions in just those three cases alone.  Farid is not some obscure expert who is

unknown to the federal government.  He has been used as a digital imaging expert in federal

cases.  (See Frabizio, supra).  He is a lead trainer of the federal government in this area.  (Exhibit

2).  The federal government exercised its discretion to *not* investigate, search, arrest or

indictment anyone in connection with Farid's federal law violations.  Defense counsel and its

experts expect no such benefit from the exercise of the government's discretion in this case.

The United States has used at least one other *private citizen* as a digital imaging expert

witnesses. It used Farid in a federal case from the First Circuit.  (United States v. Frabizio 2006

WL 2384836 (D.Mass.)).  In U.S. v. Fuller (2003), 77 Fed.Appx. 371, the United States used

Douglas Rehman, as its digital imaging expert.  Mr. Rehman has his business address as 18950

U.S. Highway 441, #201, Mt. Dora, Florida 32757.  (Exhibit 1, Rehman Report in United States

v. Debeaux).  Mr. Rehman received a copy of the Fuller's entire hard drive at his office in

Florida.  (See Transcript in Fuller).  That act alone constitutes three violations of 18 U.S.C.

2252A (Shipping by AUSA, receipt and possession by Rehman).  Mr. Rehman was also used by

the United States Attorney in Fort Worth Texas in U.S. v. Debeaux (2005) Case Number 4:04-

CR-081-Y.

The private, non-profit agency called the National Center for Missing and Exploited

Children, maintains a database of alleged contraband digital images. This possession by a non-law enforcement agency staffed with *private citizens* also violates 18 U.S.C. 2252A.

As such, states and the federal government agents have transported across state lines, alleged contraband for its experts to analyze. There is no exception in the federal statute for such transportation to possession by a private citizen even when performed by the federal government. To date there is no record of any private citizen expert witness for the state or government having a search conducted of his home and person related to his work as a digital imaging expert witness for the government in a child pornography case. This is all true despite the fact state prosecutors and federal prosecutors and their experts' conduct is regularly *identical to the conduct prohibited to be performed* by Graham's counsel and digital imaging experts.

The government may argue that what Graham's counsel intends to do as counsel as well his use of an expert is not required in order for Graham to obtain a fair trial. That argument fails when compared the government's preparation and use of its own private citizen and law enforcement experts.

The margin of victory in defense cases is often marked by the completion of tasks that the government chose not to embark upon or deemed "unnecessary." The defense cannot be limited to performing tasks that the government deems "necessary."

Without dismissal, the government has a tremendous and unconstitutionally unfair advantage. Its expert is allowed possession of the images to analyze them. It can present his testimony. He can discuss his analysis of the alleged contraband images he received. He can present to the jury digital image exhibits derived from the alleged contraband images. He can present to the jury digital image exhibits derived from other sources to reinforce his testimony. The government can present the alleged contraband images as exhibits to the jury. The

7

government can investigate website information on the seized computer to determine what sites the computer operator visited or did not visit. The government can investigate websites to determine whether they contain alleged contraband or not. The government can send copies of the images to a *law enforcement only* database to assist in its investigation. That act alone reveals that merely viewing such digital images is insufficient to determine their contraband nature.

The government and its witnesses can regularly refer back to the seized images and prepared exhibits before and during trial. Graham's counsel and any potential expert are prohibited from ***all such conduct*** by operation of the federal child pornography statutes. Graham's counsel is unable to impeach the government's witnesses with any exhibits or information contradicting the assertion that the seized images contain actual minors. Graham's digital imaging expert witness is reduced to ineffective if not entirely useless. The government cannot argue that Graham's proposed digital imaging expert's effectiveness is lessened, but sufficient. Such testimony by defense digital imaging expert witnesses has undeniably changed the outcome of identical cases as summarized above.

The chill on the defense in this case is obvious and it is here to stay. Graham cannot get a fair trial no matter the prosecutor, defense counsel or defense expert witness involved in this case. The government retains an extreme advantage while Graham's fatal disadvantage is clear.

Graham recognizes that dismissal is a drastic remedy, but no other remedy exists for him until the law permits him to prepare for this trial. Graham is risking the loss of his liberty in the murkiest and most unbalanced of arenas imaginable. He cannot effectively contest the evidence. He cannot impeach the government's witnesses who testify about or rely upon the charged items. He cannot investigate the evidence. He cannot have the services of an effective digital imaging

expert.  He cannot prepare effective digital image trial exhibits.  He is utterly without recourse except to sit and watch an inexorable march to conviction with his hands already handcuffed behind and the presumption of innocence an empty platitude.

    A.  <u>Precedent for Dismissal</u>

This dilemma has been presented to two state trial courts and one state appellate court who have all ruled a citizen cannot obtain a fair trial under these conditions.  (Exhibits 3 – 6).  Exhibit 3 is a trial court dismissal of an Ohio case involving identical charges.  Exhibit 5 is the appellate opinion affirming that dismissal.  Exhibits 6 and 7 involve the dismissal of another Ohio case citing the Fair Trial violation.

As an example of the stark unfairness, the court in <u>Brady</u> pointed out that the state in that case had hired a college professor and erstwhile child pornography expert, Hany Farid.  It sent, in interstate commerce, to Farid, copies of the allegedly contraband images from the <u>Brady</u> case.  (Exhibit 3).  Farid received and possessed these items.  If contraband, the state and Farid violated the federal statute three times.  Farid was not and has never been threatened with prosecution for violation of the federal statute.  In fact, he has subsequently testified as a government expert in federal cases.  (<u>United States v. Frabizio</u>, 341 F.Supp.2d 47 (D.Mass.2004).  Since <u>Brady</u>, he also testified as an expert for the State of Ohio performing the same federal-statute-violating tasks again.  (<u>Ohio v. Harrison</u>, 2005-CR-10-099).  The purposeful inequality of the application of the federal statute, i.e. to the detriment of defendants, but the benefit of prosecutors is obvious.

    B.  <u>The "Protect the Children" Response</u>

The federal government often responds to these motions that the prohibitions on Graham's defense counsel and defense experts are necessary to protect children.  That is, minors depicted in such images as may be found during Graham's counsel's or expert's investigation

and trial preparation are harmed by their images even being viewed. While that position is logically questionable, the U.S. Supreme Court has found "the objective of shielding children does not suffice to support a blanket ban if the protection can be accomplished by a less restrictive alternative." (United States v. Playboy Entertainment Group, Inc., 529 U.S. 803, 814, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000). The federal government has the power to agree to respect this court's protective order in this case. It chooses not to do so for tactical advantage to prosecutors. This is patently the case because in all such prosecutions, federal and state prosecutors regularly use thousands of such alleged contraband images, share them with detectives, expert witnesses, law enforcement databases and their non-law enforcement personnel and display them to countless juries across the country. If merely viewing such images was truly a harm to children, prosecutors would be the most egregious child abusers in the country. They are not.

C. Harm to Graham in Cross Examining Government Witnesses

In addition to crippling any potential defense, the prohibition on these necessary pre-trial investigatory and trial preparatory tasks harms Graham's ability to confront the evidence the government is able to acquire without threat of federal prosecution.

Graham's counsel is unable to impeach the government's witnesses with any exhibits or information contradicting the government's assertion that the seized images contain actual minors. Graham is unable to effectively make use of a digital imaging expert witness, presuming he could retain one willing to risk federal indictment, to challenge the government's technological claim that Graham could easily have known the indicted items were not constitutionally protected. This lack of capacity by Graham has been admitted to by government digital imaging expert witnesses in several cases. (See, e.g. Frabizio).

In <u>U.S. v. Frabizio</u> (August 11, 2006) 2006 WL 2384836 (D.Mass) the government's leading digital imaging expert **<u>admitted</u>** that he lacked the capacity to determine whether a digital image was constitutionally protected or not.  Following that testimony, the court found the government's leading digital imaging expert from the FBI, Thomas Musheno, could not meet any of the <u>Daubert</u> standards nor anything equivalent to them.  (Id).  It excluded him from the case based upon his admission regarding his lack of capacity.

The <u>Frabizio</u> court addressed the "threshold question [of] whether visual observation is at all appropriate to the task at hand: distinguishing real images from virtual ones."  (Id. at 2).  The court concluded that "neither an expert witness *nor a lay jury*, using only visual means, can determine whether the images in this case are real or virtual to the level of certainty required in a criminal prosecution."  (Id. at 2).  (Emphasis added).  At a pre-trial hearing, provided the ability to pursue and present the appropriate evidence, Graham would have established that he, like Musheno, lacks the capacity to determine whether a digital image is constitutionally protected or not.  Once established, 18 U.S.C. 2252A is *de facto* vague as applied to Graham.

There is no case decision, federal or state, in which any digital imaging expert witness has testified, holding that mere possessors like Graham have the capacity to know whether a given digital image is constitutionally protected or not – with good reason – they do not.  This fact can be established by displaying for the court (and any relevant government witnesses on the topic) an array of indicted items mixed with digital image exhibits created to "appear to be" contraband.  No government witness nor this court will be able to reliably distinguish between the constitutionally protected and not constitutionally protected items.  This demonstration in a pre-trial hearing will establish the vagueness of this statute as applied to Graham.  That very demonstration has been presented to several other courts (as noted above) with identical results –

no court has concluded that viewing such images enables the viewer to know whether the image is constitutionally protected or not.  That presentation will never be conducted because of defense counsel and any defense expert's reasonable fear of federal prosecution for even preparing and presenting the necessary exhibits to that hearing.

The government may argue that this presentation can be conducted using images that do not "appear to be" contraband.  However, it is unlikely the government would, following such a presentation, concede that the inability to distinguish alterations in such legal images also applies equally to alleged contraband images.  And, the government is not required to make any such concession.  It can easily respond to that presentation using images that do not "appear to be" contraband by arguing that Graham has failed to show the court that constitutionally protected images and those that are not of this type are indistinguishable.

To rule for the government on this motion, this court must find that Graham can get a fair trial despite the reality that evidence that is available which would result in the dismissal of the entire case for statutory vagueness cannot be presented.  And, it cannot be presented solely because the federal government has selectively chosen to impose the strictures of the federal statute on defense counsel and their experts while not enforcing the statute for violations committed by private citizen experts, like Farid, who work exclusively for state and federal prosecutors.

<u>CONCLUSION</u>

Wherefore, Mr. Graham respectfully requests this court dismiss this case as he is unable

to obtain a constitutionally fair trial in light of the application of federal law exclusively to

defense counsel and defense experts.  That application has deleted valid factual and

constitutional defenses afforded to him by the United States Constitution.

_____ /s/ _____

Clayton A. Sweeney, Jr.

DE Bar No. 3359
PO Box 55441
Philadelphia PA 19127-5440

(215) 509-1012
(215) 509-1013 (f)
clayt2@verizon.net

**PENDING ADMISSION**
**PRO HAEC VICE**
Dean Boland 0065693
18123 Sloane Avenue
Lakewood, Ohio 44107
216-529-9371 ph
866-455-1267 fax
dean@deanboland.com

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that one true and correct copy of the foregoing has been furnished to the Edmund Falgowski, Esquire., U.S. Attorney's Office, 1007 Orange Street, Suite 700 , P.O. Box 2046, Wilmington, DE 19899-2046 by filing through the CF/ECM electronic filing system this 31st day of March, 2008.

_____/s/_____

Clayton A. Sweeney, Jr.

IN THE COURT OF COMMON PLEAS OF CENTRE COUNTY, PENNSYLVANIA
CRIMINAL LAW

COMMONWEALTH OF PENNSYLVANIA          )
                                      )
        VS.                           )      Nos.    CP-14-CR-323-2006
                                      )             CP-14-CR-324-2006
SHAWN G. STEWART                      )             CP-14-CR-325-2006

Commonwealth Attorney:    Lance T. Marshall, Esquire
Defense Attorneys:        Joseph L. Amendola, Esquire/Dean Boland, Esquire

**ORDER**

AND NOW, to wit, this __19__ day of __July_____, 2006, counsel for the

Defendant in the above-captioned matters having requested a Protective Order and this Court

concluding that such an Order is appropriate, this Court enters the following Order:

## A. Proper Persons

1.    Mr. Stewart is entitled to receive from the Commonwealth a mirror image

copy of all seized computers and other media ("case materials").

2.    The Commonwealth's counsel and experts are proper persons to possess,

review, use and provide to other relevant experts the case materials.

3.    Mr. Stewart's defense counsel and experts are proper persons to possess,

review, use and provide to relevant experts the case materials.

4.    Such conduct is exempted from prosecution as provided in the "judicial

purposes" exception of 18 Pa. C.S.A. Section 6312(f).

## B. Authorization for Proper Purposes

5.    To receive, possess and copy as necessary for judicial purposes a complete

copy of all seized media in this matter.

Exhibit 1

6.      To receive and possess copies of the alleged contraband digital images seized in this matter.

7.      To make copies of the alleged contraband digital images as necessary and create digital image exhibits addressing the technological issues of this case for use at trial in this matter. Said copies and/or digital image exhibits may be produced by either party for judicial purposes and must be maintained within the control of the proper persons as herein defined.

8.      To research the origin of the alleged contraband images.

9.      The Court finds that the above-referenced provisions are to be deemed proper purposes pursuant to this Order and 18 Pa. C.S.A. Section 6312(f).

10.     The above tasks are necessary for a fair trial as to both the Commonwealth and the Defendant.

## C. Disposition

11.     At no time during the pendency of this matter at the trial level or upon appeal shall any of the material covered by this Order be distributed to any persons beyond those covered by this Order.

12.     At the conclusion of this matter at the trial level:

a.      Originals, if any, and all copies of alleged contraband are to be returned to the District Attorney's Office.

b.      All Commonwealth and defense digital image exhibits containing all or some portion of the alleged contraband seized in this matter are to be submitted to the Court for safekeeping pending any appeals.

2

Exhibit 1

c.    No later than seven (7) days following the conclusion of the trial and
any appeals, a letter signed by each party covered by this Order shall be filed with this Court
confirming that all terms of this Order have been complied with.

### C. No Federal Preemption

13.    The Pennsylvania Code governs the conduct of the Commonwealth, its
experts, defense counsel and its experts in this matter.

14.    Any federal statute(s) to the contrary of the relevant statutes in the
Pennsylvania Code do not preempt the provisions and protections in the Pennsylvania Code and
this Protective Order.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the
Defendant's Motion for Protective Order is granted; the above findings are the Order of this Court
and will govern the rights, duties, and obligations of the parties, as well as provide protection to the
parties for the proper purposes as defined by this Order.

BY THE COURT:

Hon. Bradley P. Lunsford, Judge

3

Exhibit 1

# *walk in their shoes*

at the Nation's foremost conference on responding to the victimization of children.



**18TH ANNUAL**

# CRIMES AGAINST
# CHILDREN
## CONFERENCE

**AUGUST 21–24, 2006   DALLAS, TEXAS**




*Presented by the Dallas Children's Advocacy Center and the Dallas Police Department*

Exhibit 2

**AGE PROGRESSION, REGRESSION AND FACIAL RECONSTRUCTION**
*Presented by: Stephen M. Loftin*
Monday 3:00–4:30 pm (3B)
Wednesday 1:00–2:30 pm (10B)
This presentation will demonstrate techniques used at NCMEC for age progressing long term missing children and also the age regression of detectives who use photos of themselves to investigate Internet crimes.

**CROSS EXAMINATION OF WITNESSES IN ICAC CASES**
*Presented by: Tracy Thompson Braun & Judy Johnston*
Monday 3:00–4:30 pm (3C)
Thursday 8:00–9:30 am (12D)
This workshop will address effective cross examination techniques for expert witnesses in ICAC cases.

**STRATEGIES FOR EFFECTIVE CASE REVIEWS AND STAFFINGS**
*Presented by: Selena Munoz*
Monday 3:00–4:30 pm (3E)
This session will examine the need for the case review/case staffing process and explore successful strategies for establishing the same.

**METHAMPHETAMINE AND CHILDREN: A TOXIC COMBINATION**
*Presented by: Emma Raizman, MD*
Monday 3:00–4:30 pm (3F)
Tuesday 1:00–2:30 pm (6F)
This presentation will discuss Methamphetamine: the dynamics of a meth lab, medical effects on adults and children, risks to children exposed to the drug in utero and the relationship between drug use and child abuse.

**MEDICAL ANALYSIS OF CHILD PORNOGRAPHY**
*Presented by: Sharon Cooper, MD*
Monday 3:00–4:30 pm (3H)
Tuesday 8:00–9:30 am (4H)
This presentation will discuss how child pornography is a link to various forms of child sexual exploitation and will emphasize the "normalization" of sexual harm being promoted to kids via the media.

**THE MAKING OF A CHILD ABUSE DETECTIVE**
*Presented by: Brian Killacky*
Monday 3:00–4:30 pm (3P)
Tuesday 10:00–11:30 am (5P)
This presentation will discuss the necessary skills and talents that those responsible for investigating crimes against children should possess or develop to reach their professional capacity.

**ADVANCED ISSUES IN FORENSIC INTERVIEWING, PART I & II**
*Presented by: Martha Finnegan & Catherine Connell*
Tuesday 8:00–11:30 am (4A-5A)
This workshop will review the pitfalls, difficulties, and concerns of interviewing victims in child pornography and Internet traveler cases.

**INTERNATIONAL FAMILY ABDUCTION**
*Presented by: Julia Alanen*
Tuesday 8:00–9:30 am (4B)
Thursday 8:00–9:30 am (12B)
This presentation will discuss civil and criminal legal remedies to international parental/family abduction.

**DIGITAL IMAGING FORENSICS:**
**FROM PHOTONS TO PIXELS TO PHOTOSHOP**
*Presented by: Hany Farid, PhD*
Tuesday 8:00–9:30 am (4C)
Tuesday 1:00–2:30 pm (6C)
This presentation will discuss visual and computational techniques for detecting tampering in digital media. Implications of computer graphics technology to the recent "virtual porn" debate will also be discussed.

**FAST FORENSIC ACQUISITIONS**
*Presented by: Steve Branigan*
Tuesday 8:00–9:30 am (4D)
This session will cover tips and techniques for performing forensic acquisitions fast.

**THE USE OF PLAY THERAPY IN THE ASSESSMENT AND TREATMENT OF SEXUALLY ABUSED CHILDREN, PART I & II**
*Presented by: Eliana Gil, PhD*
Tuesday 8:00–11:30 am (4E-5E)
This workshop will explore specific ways in which play therapy can advance therapeutic goals when working with abused children.

**THE 5 B'S OF CHILD ABUSE:**
**BRUISES, BURNS, BONES, BELLY & BRAIN, PART I & II**
*Presented by: Cindy Christian, MD*
Tuesday 8:00–11:30 am (4F-5F)
Wednesday 8:00–11:30 am (8F-9F)
This presentation will provide an overview of the medical evaluation of abusive injuries including patterns of injury, role of diagnostic studies, and conditions mistaken for abuse.

**CASE STUDY: THE GREEN RIVER KILLER, PART I & II**
*Presented by: Jeffrey Baird & Robert Wheeler, PhD*
Tuesday 8:00–11:30 am (4i-5i)
Wednesday 8:00–11:30 am (8i-9i)
This presentation will discuss what can be learned from the investigation, prosecution and forensic psychological evaluation of the serial killer Gary Ridgway who pled guilty to 48 counts of murder.

**DEFENSIVE TACTICS FOR**
**NON-LAW ENFORCEMENT PERSONNEL, PART I & II**
*Presented by: Billy Hataway & Tom Popken*
Tuesday 8:00–11:30 am (4J-5J)
This session will provide information and examples of defensive tactics that may be utilized in the event a situation is encountered that requires self defense.

**COURTROOM PSYCHOLOGY:**
**HOW TO BE A GOOD WITNESS AND SURVIVE IN THE COURTROOM**
*Presented by: Lawrence Braunstein*
Tuesday 8:00–9:30 am (4L)
Wednesday 3:00–4:30 pm (11L)
This program will address issues such as body language, the importance of what you say and how you say it, demonstrative evidence and effective presentation, the trial as theatre, feeling comfortable in the courtroom, how to defend yourself on cross examination and how to protect yourself in the witness box.

**COLD CASE CHILD DEATH INVESTIGATION**
*Presented by: Brian Killacky & Ron Laney*
Tuesday 8:00–9:30 am (4P)
This presentation will discuss the importance of a cold case or long term investigative approach into the death of children.

Exhibit 2

IN THE COURT OF COMMON PLEAS
ASHTABULA COUNTY, OHIO

| | |
|---|---|
| THE STATE OF OHIO, | ) |
| | ) CASE NO. 2004-CR-349 |
| Plaintiff, | ) |
| | ) |
| vs. | ) **JUDGMENT ENTRY** |
| | ) |
| DANIEL BRADY, SR., | ) |
| | ) |
| Defendant. | ) |

The Defendant, Daniel Brady, Sr., was indicted by the September 16, 2004, recall session of the Ashtabula County Grand Jury, on seventeen counts of Pandering Obscenity Involving a Minor, all fourth degree felonies; seventeen counts of Pandering Obscenity Involving a Minor, second degree felonies; and sixteen counts of Pandering Sexually Oriented Material Involving a Minor, also second degree felonies. These charges involve the Defendant's possession of obscene material, which had a minor as one of its participants.

The State of Ohio has been represented in these proceedings by Assistant Prosecutor Teri Burnside and the Defendant is represented by Attorney David W. PerDue.

In Ashcroft vs. Free Speech Coalition, 535 U.S. 234, 122 S.Ct. 1389, (2002), the Supreme Court of the United States, in interpreting the Child Pornography Prevention Act of 1996 (CPPA), 18 USC. §2256(8)(B), held that the prohibition on "virtual child pornography" which depicts minors in sexually explicit images but was produced by means other than using real children, such as through the use of youthful looking adults or computer imaging technology, was overly broad and unconstitutional. The

Exhibit 3

472

-2-

Federal Government argued that should no distinction be made between actual and

virtual child pornography, since it is difficult to distinguish between images made by

real children and those produced by computer imaging. Both kinds of images must

be prohibited since virtual child pornography whets the appetites of pedophiles and

encourages them to engage in illegal conduct. The Supreme Court rejected that

argument and stated that the Government may not prohibit speech because it

increases the chance that an unlawful act will be committed at some time in the

future.

In the case under consideration here, the Defense contends that images

depicted in Counts One through Fifty are not of real children, but rather are virtual

images, and, therefore, not a crime under the holding of Ashcroft vs. Free Speech

Coalition.

On April 25, 2005, the Court granted the Defendant's Motion for Appointment

of an Expert Witness, and Dean Boland, who is an attorney, was appointed.

According to his curriculum vitae, he has lectured to various bar and attorneys

groups about the use of digital images as evidence and has testified as an expert

witness on digital images in state courts in Ohio, as well as federal court. On May 31,

2005, the Court conducted a Daubert hearing concerning the qualifications of Boland

to testify as an expert regarding Counts One through Fifty, and a Daubert hearing is

scheduled for November 18, 2005, concerning the qualifications of the State's expert,

Hany Farid.

Exhibit 3

-3-

On April 25, 2005, the Court granted a protective order, whereby the State of
Ohio, over the State's objection, was to provide to the Defendant's attorney a
compact disc or discs, which contained the images that are the subjects of Counts
One through Fifty, for the purpose of transporting those discs to Boland. The
protective order stated that: "Dean Boland is hereby authorized to possess this
compact disc to perform the necessary examinations on the compact disc for
purposes of possible evidentiary use." The protective order provided that Boland
was not to convey or transport the disc to any other individuals except Defendant's
attorney, David W. PerDue, or counsel for the State, without specific order of this
Court.

These compact discs containing the same images were provided to the State's
expert witness, Hany Farid, who is an associate professor of computer science and
cognitive neuroscience at Dartmouth University in Hanover, New Hampshire. In a
report dated May 28, 2005, he acknowledged that he received on May 25, 2005, from
Teri Burnside, Assistant Ashtabula County Prosecutor, seven CD's with eighty
images. An analysis of these images was done with a computer program that Farid
said that he had developed to determine whether they were photographic or
computer generated. He found the eighty images either to be too small or too low
quality to reliably extract statistical measurement for use by his program. Instead, he
visually inspected all eighty images and found that many of them were of sufficient
quality that he could render an opinion concerning their authenticity. His opinion
was that they showed no sign of digital tampering nor did they appear to be

Exhibit 3

-4-

computer generated and he cited various factors which led to his opinion that the
images were authentic.

On October 14, 2005, the Defendant was present with his attorney, David W.
PerDue, and appearing on behalf of the State of Ohio was Assistant Prosecutor Teri
Burnside. The Defendant's expert witness, Dean Boland, testified that on June 24,
2005, agents from the Federal Bureau of Investigation executed a search warrant on
his home and person. The affidavit, in support of the search warrant, was admitted
into evidence as Defendant's Exhibit B. Boland testified that the materials seized by
the FBI were related to his activities as an expert witness in a Federal Court in
Oklahoma, as well as cases in the state of Ohio. Among the items seized from his
personal laptop computer were, according to Boland's testimony, approximately fifty
digital images in various stages of completion, which would be used as exhibits for
the Defense in this case. At the time of his testimony on October 14, 2005, Boland
had not received notice that he may be indicted for possession of various items
seized by the FBI on June 24, 2005.

It is the position of the Prosecution that the images that are the subjects in
Counts One through Fifty will be made available for review by Boland. However,
they must remain under the control of the State of Ohio. Boland testified that he has
software that permits him to do an analysis of the images. However, if he is
prohibited from preparing any trial exhibits for the Defense, it will be necessary for
him to rely upon his memory concerning his analysis of the images. Further, he
would be prohibited from making any exhibits, as he has been informed by the FBI,

Exhibit 3

000002

-5-

through a search warrant affidavit, that it would be a violation of federal law,

presumably, the Child Pornography Prevention Act of 1996, for him to create those

exhibits for the Defense. Simply put, Boland or any other expert on behalf of the

Defendant risks indictment by the Federal Government in preparing trial exhibits for

the Defendant.

Boland has described Farid's analysis as a statistical or mathematical analysis

of the images. However, Farid, in the May 28, 2005 report, states that the images

were too small or of such low quality that he was not able to do a reliable statistical

measurement. The Defense has requested the appointment of another expert

witness, Devin Hosea, who, according to Boland's testimony, has successfully

challenged Farid's methodology in the past, and cited an unnamed case in Federal

Court in Boston, Massachusetts. Based upon Farid's report that he did a visual

inspection of the images, it would appear that Hosea's testimony would not be

necessary to challenge Farid's analysis.

The Prosecution argues that the preparation of all exhibits by Boland would be

a violation of Ohio Revised Code §2907.323(A)(1). This section provides that no

person shall photograph any minor, who is not that person's child or ward, in the

state of nudity, or create, direct, produce, or transfer any material or performance that

shows the child in the state of nudity, unless both of the following apply:

    a.    the material or performance...is to be disseminated, displayed,
        possessed...for a judicial...purpose...by a prosecutor, judge, or other
        person having a proper interest in the material or performance;

    b.    the minor's parents, guardian, custodian consents in writing...

Exhibit 3

00993

-6-

Whoever violates (A)(1) or (A)(2) of this section has committed a second degree felony.

The State claims that in the search of Boland's computer by the FBI agents, three minor children were located, who were depicted in the child pornography images created by Boland, and whose parents never granted permission to Boland for the use of their children in the material in any fashion.

However, Ohio Revised Code §2907.323(A)(2), goes on to provide that there is an exception where the material is presented for a judicial or other proper purpose by "a prosecutor, judge, or other person having a proper interest in the material..." The Court believes that the terminology "or other proper purpose" and "or other person having a proper interest in the material" would refer to an expert witness, such as Boland. In this case, the Court established a protective order operating under the supervision of the Court regarding the use of the material.

A violation of the Child Pornography Prevention Act could exist by morphing the head of an actual child onto the body of an adult under the holding in Ashcroft vs. Free Speech Coalition, as may have been done here by Boland. The Supreme Court of the United States found that there was a legitimate public interest in prohibiting the image of an actual child in an obscene or pornographic performance.

Here, the Defendant should have the right to offer expert testimony that the images for which he is being prosecuted come within the exception found by the Supreme Court in the Ashcroft decision; that is, the photos do not depict a real child, but that of a virtual child whose images are computer generated. Here lies the

Exhibit 3

00994

-7-

dilemma in this case, Boland may well be in compliance with the exceptions under
Ohio Revised Code §2907.323, however, he may find himself in violation of the CPPA
under the Ashcroft holding and in preparing images for the Defense, he may find
himself prosecuted by the Federal Government under the CPPA. Boland testified that
he is represented by counsel as a result of the search conducted by the FBI, and has
been advised by his counsel not to have in his possession the CD's of the images that
are the subject of this case, because of the possibility that he may be indicted by the
Federal Government for the possession of child pornography. His testimony was
that, until the search by the FBI, he was under the belief that he was protected by the
exception in Ohio Revised Code §2907.323(A)(2), that what he did was for judicial or
other proper purposes. He believes now that the federal law preempts the Ohio
exception under §2907.323(A)(2), and he places himself in jeopardy of indictment in
continuing his duties as an expert in this matter by possessing the CD's or preparing
trial exhibits.

A Catch 22 situation has been created. Defendant's expert is not permitted to
carry out what this Court believes is legitimate duties as a trial expert concerning the
determination of whether the images are actual children or virtual images, because
he risks prosecution by the Federal Government. Presumably, the State of Ohio will
call as its expert, Hany Farid, who will testify that the images are in fact of actual
children, and the Defense is then left without an expert witness, Boland, who has not
been allowed to do an analysis of those photos in order to assist the Defense in the

Exhibit 3

-8-

cross examination of Farid. Farid has been free to do his analysis without threat of
prosecution by the Federal Government.

The Sixth Amendment of the United States Constitution provides that "in all
criminal prosecutions, the accused shall enjoy the right to a speedy and public
trial...and have the assistance of counsel for his defense." As part of the Sixth
Amendment right, the Defendant also has the right to have expert witnesses to assist
in his defense. Here, the Defendant is denied effective assistance of his expert
witness, Dean Boland, because Boland runs the risk of indictment if he possesses the
same CD's containing the computer images that are the subjects of Counts One
through Fifty, and that the State's own witness, Hany Farid, was permitted to
possess and analyze at Dartmouth University.

The Court finds that the Defendant, as a result of the limitations of the expert
witness, Dean Boland, will not be allowed to have the effective assistance of counsel
as he is guaranteed under the Sixth Amendment of the U.S. Constitution. If, in fact,
these images are, as Farid claims, not computer images, but of actual children, the
Defendant is in violation of the Child Pornography Prevention Act of 1996, and he may
be prosecuted by the Federal Government. The Court feels that would be the
preferable outcome in this case, since the Federal Court can then establish the
guidelines for the Defendant's expert witness concerning the evaluation of the CD's
and the preparation of any trial exhibit without running the risk that the Defense
expert would find himself indicted for the possession of this material.

Exhibit 3

0C996

-9-

The Defendant's Motion to Dismiss is hereby **GRANTED.**  Counts One through

Fifty are **DISMISSED** without prejudice.

**IT IS SO ORDERED.**

Pursuant to Civil Rule 58(B), the Clerk of this Court is directed to serve notice

of this judgment and its date of entry upon the journal upon the following:

**Prosecuting Attorney; David W. PerDue, Esq.; and the Assignment Commissioner.**

ALFRED W. MACKEY, JUDGE

*Civ-I-8*

November 15, 2005
AWM/bb

Exhibit 3

00997

[Cite as *State v. Brady*, 2007-Ohio-1779.]

# COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO.  2005-A-0085** |
| DANIEL BRADY, SR., | : | |
| Defendant-Appellee. | : | |

Criminal Appeal from the Court of Common Pleas, Case No.  2004 CR 349.

Judgment:  Affirmed.

*Thomas L. Sartini*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047  (For Plaintiff-Appellant).

*Dean Boland*, 18123 Sloane Avenue, Lakewood, OH   44107   (For Defendant-Appellee).

WILLIAM M. O'NEILL, J.

{¶1}   Appellant, the state of Ohio, appeals the judgment entered by the Ashtabula County Court of Common Pleas.   The trial court dismissed a total of 50 counts against appellee, Daniel Brady, Sr. ("Brady").

{¶2}   Brady was indicted on 17 counts of pandering obscenity involving a minor, fourth-degree felonies, in violation of R.C. 2907.321; 17 counts of pandering obscenity

Exhibit 4

involving a minor, second-degree felonies, in violation of R.C. 2907.321; 16 counts of pandering sexually oriented material involving a minor, second-degree felonies, in violation of 2907.322; and five counts of gross sexual imposition, third-degree felonies, in violation of R.C. 2907.05.  Brady pled not guilty to all the counts against him.

{¶3}   Upon Brady's motion, the trial court bifurcated the five gross sexual imposition charges from the remaining counts.  The gross sexual imposition charges were tried separately and are not at issue in this appeal.

{¶4}   The trial court appointed Dean Boland to serve as an expert witness for Brady.  Boland runs a consulting company.  One of his specialties is the analysis of computer images.  Boland has testified as an expert witness for defendants charged with possession of computer pornography in state and federal courts.  Boland is also a licensed attorney and is Brady's appellate counsel in this appeal.  Boland did not serve as Brady's counsel at the trial court level.

{¶5}   Boland's testimony was necessary in light of the United States Supreme Court's decision in *Ashcroft v. The Free Speech Coalition*.[1]  In *Ashcroft v. The Free Speech Coalition*, the United States Supreme Court held that virtual child pornography was protected speech under the First Amendment to the United States Constitution and, thus, could not be banned by child-pornography statutes.[2]   Boland's expert assistance essentially entailed two functions.  First, he would review the state's exhibits to determine whether they were virtual images or if they contained real children.  Second, through the introduction of other exhibits, he would attempt to demonstrate the

---

1. *Ashcroft v. The Free Speech Coalition* (2002), 535 U.S. 234.
2. Id. at 256.

Exhibit 4

difficulty of distinguishing between actual and virtual child pornography.

{¶6}    The same day the trial court appointed Boland as an expert, it issued a protective order regarding potential evidence.   Specifically, the protective order provided:

{¶7}    "A compact disc has been provided (or will be provided) by the State of Ohio to counsel for defendant, David W. PerDue, of evidentiary matter containing possible contraband in the nature of child pornography.

{¶8}    "Defense counsel has a right and duty not only to review the images on the disc, but also to provide those images to imaging experts for purposes of examination and possible preparation of testimony pertaining to those images.

{¶9}    "It is necessary to transport this compact disc to allow counsel for the defendant to render effective assistance of counsel to his client and that counsel for the defendant, counsel for the State of Ohio, as well as anticipated expert witnesses, including Dean Boland [address and phone number deleted] are hereby authorized to possess this compact disc for this purpose.

{¶10}   "Defense counsel is authorized to transport this compact disc to Dean Boland for purposes of providing legal representation to their client.

{¶11}   "Dean Boland is hereby authorized to possess this compact disc to perform the necessary examination on this compact disc for purposes of possible evidentiary use."

{¶12}   Boland interpreted this protective order as giving him permission to view and possess the potentially illegal material with immunity from prosecution.  His belief was based on the language in Ohio's obscenity statutes that permits possession of

Exhibit 4

certain otherwise illegal material if it is used for a "proper purpose" by a "prosecutor, judge, or other person having a proper interest in the material."[3]

{¶13}  In June 2005, the state provided the evidentiary disc to Boland.   In addition, the state sent similar materials to its expert witness, Dr. Hany Farid.

{¶14}  On June 24, 2005, the Federal Bureau of Investigation ("FBI") executed a search warrant on Boland's residence.   The FBI seized Boland's computer and several compact discs.   Included in the seized material was computer equipment containing potential exhibits Boland had created for trial and the compact disc containing the images at issue in this matter.   An affidavit submitted in support of the search warrant alleged Boland violated Section 2252A, Title 18, U.S.Code.   This federal statute does not contain the exemption for a "proper person" using the material for a bona fide purpose similar to the exemptions contained in the Ohio statutes.

{¶15}  A hearing was held before the trial court on October 14, 2005.  At the time of the hearing, Boland still faced potential indictment stemming from the execution of the June 2005 search warrant.  Boland testified that, upon the advice of his counsel, he would not accept another copy of the prospective exhibits containing the allegedly illegal images in this matter.  At the conclusion of this hearing, Brady orally moved to dismiss the indictment.

{¶16}  Following the hearing, Brady filed a written motion to dismiss the indictment.   The state filed a brief in opposition to Brady's motion to dismiss the indictment.   Attached to the state's motion was a copy of the search warrant affidavit.

---

3.  See R.C. 2907.32(B); R.C. 2907.321(B)(1); R.C. 2907.322(B)(1); and 2907.323(A)(3)(a).

Exhibit 4

{¶17} The trial court granted Brady's motion to dismiss and dismissed all 50 counts of the indictment related to pornography.

{¶18} The state has timely appealed the trial court's decision pursuant to R.C. 2945.67.[4] The state raises two assignments of error. Its first assignment of error is:

{¶19} "The trial court erred in granting appellee's motion to dismiss, where it was based on facts that went beyond the face of the indictment."

{¶20} Brady's motion to dismiss was permitted by Crim.R. 12, which provides, in part:

{¶21} "Prior to trial, any party may raise by motion any defense, objection, evidentiary issue, or request that is capable of determination without the trial of the general issue."

{¶22} In his motion to dismiss, Brady was arguing that his due process right to a fair trial was violated. His contention was that, due to circumstances beyond his control, namely the federal criminal matter against Boland, he was denied the assistance of an expert witness.

{¶23} The United States Supreme Court has held:

{¶24} "[W]hen a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to assure that the defendant has a fair opportunity to present his defense. This elementary principle, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where *** a defendant is denied the

---

4. See, also, *State v. Hayes* (1986), 25 Ohio St.3d 173, 174-175.

5

Exhibit 4

opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake."[5]

{¶25}  In *Ake v. Oklahoma*, the Supreme Court recognized the fundamental right to expert witnesses in certain cases.[6]  In following *Ake v. Oklahoma*, the Supreme Court of Ohio has held that when an indigent criminal defendant makes a sufficient showing that an expert is necessary, the Due Process Clause, as set forth in the Fifth and Fourteenth Amendments to the United States Constitution, requires the appointment of an expert witness to aid in the defense.[7]

{¶26}  The state argues Brady's motion to dismiss was premature in that it challenged the sufficiency of the indictment.  We agree that "a pretrial motion [to dismiss] must not entail a determination of the sufficiency of the evidence to support the indictment."[8]  However, in this matter, Brady was not challenging the sufficiency of the potential evidence to support the charges in the indictment.  Rather, he was making a constitutional challenge, arguing his right to a fair trial was compromised due to the FBI's actions against Boland.

{¶27}  Brady's motion to dismiss did not implicate any trial issues; thus, it was capable of determination prior to trial pursuant to Crim.R. 12.

{¶28}  The state's first assignment of error is without merit.

_____

5.  *Ake v. Oklahoma* (1985), 470 U.S. 68, 76.
6.  Id. at 80-82.
7.  *State v. Mason* (1998), 82 Ohio St.3d 144, 150.
8.  *State v. Riley* (Dec. 31, 2001), 12th Dist. No. CA2001-04-095, 2001 Ohio App. LEXIS 5999, at *5, citing *State v. O'Neal* (1996), 114 Ohio App.3d 335, 336.

Exhibit 4

{¶29} The state's second assignment of error is:

{¶30} "The trial court erred in granting appellee's motion to dismiss where appellee claims he cannot receive a fair trial due to limitations placed upon appellee's expert witness."

{¶31} This court uses a de novo standard of review when reviewing a trial court's decision regarding a motion to dismiss.[9]

{¶32} "Pursuant to *Ake*, it is appropriate to consider three factors in determining whether the provision of an expert witness is required: (1) the effect on the defendant's private interest in the accuracy of the trial if the requested service is not provided, (2) the burden on the government's interest if the service is provided, and (3) the probable value of the additional service and the risk of error in the proceeding if the assistance is not provided."[10]

{¶33} Presumably, the trial court considered these factors. Thereafter, the trial court determined an expert witness was necessary in this matter to ensure Brady's due process right to a fair trial. Such decision is left to the sound discretion of the trial court.[11] On appeal, the state does not contest the trial court's decision that Brady was entitled to the services of an expert.

{¶34} Boland testified that, upon the advice of counsel and due to the threat of additional federal prosecution, he could not possess another copy of a compact disc containing the allegedly illegal images in this matter. Further, he testified he could not conduct a proper investigation of any websites from which the images might have

---

9. (Citations omitted.) *State v. Palivoda*, 11th Dist. No. 2006-A-0019, 2006-Ohio-6494, at ¶4.
10. *State v. Mason*, 82 Ohio St.3d at 149, citing *Ake v. Oklahoma*, 470 U.S. at 78-79.
11. *State v. Mason*, 82 Ohio St.3d at 150.

Exhibit 4

allegedly originated.  Finally, he could not use his expertise to create potential exhibits for Brady's trial.

{¶35}  Not only was Brady denied the expert services of Boland, he was denied the expert services of all potential experts.  Boland testified that no other expert witness would risk federal prosecution to assist Brady.  Further, Boland testified that, in his opinion, Brady's counsel was duty-bound to inform potential experts about the possibility of federal prosecution.  In light of this requirement, it would be nearly impossible to find a competent expert.

{¶36}  The state asserts Brady was not prejudiced because Boland's creation of certain images involved "morphing."  Morphing is the practice of altering innocent pictures of real children to make the children appear to be engaged in sexual conduct.[12]  The affidavit described certain images that were allegedly in Boland's possession.  The state contends these images violated R.C. 2907.323(A).  A specific "morphed" image may or may not violate R.C. 2907.323(A), depending on a legal and factual conclusion of whether the particular image shows a minor "in a state of nudity."  We decline to engage in an analysis of this issue at this time.  There is no evidence in the record regarding these specific images.  Since no actual images were introduced, we cannot conclude that Boland's alleged production of these images violated R.C. 2907.323.  On a similar point, we note the state gleans all of its factual references from the search warrant affidavit.  This affidavit, like many affidavits submitted in support of a search warrant, contains significant hearsay information.[13]  Moreover, the sole purpose of the

---

12.  *Ashcroft v. The Free Speech Coalition*, 535 U.S. at 242.
13.  *State v. Craig*, 110 Ohio St.3d 306, 2006-Ohio-4571, at ¶33, quoting *Illinois v. Gates* (1983), 462 U.S. 213, 238.

Exhibit 4

affidavit was to provide the magistrate with sufficient probable cause to issue the search warrant.[14]  Finally, there is no evidence as to what the FBI agents actually found during the search of Boland's residence and person.

{¶37}  At the hearing, it was suggested that Boland could review the materials at issue in Brady's case at the prosecutor's office.  This suggested solution would still not permit Boland to create exhibits for trial.  Additionally, Boland testified that he uses certain software in his analysis that the prosecutor's office does not have.  Also, even though he would be in the prosecutor's office, it could be argued that he "received," albeit temporarily, child pornography in violation of Sections 2252(a)(2)(A) and/or 2252A(a)(2), Title 18, U.S.Code.  Another of Boland's concerns was visiting websites where the allegedly illegal images may have originated.  He believed he could still be subject to federal prosecution for conducting illegal internet activity at the prosecutor's office.  This belief was legitimate in that Sections 2252(a)(2)(A) and 2252A(a)(2), Title 18, U.S.Code prohibit receiving any images of child pornography that have traveled in interstate or foreign commerce, "including by computer."  Finally, Boland testified regarding his concern that he would not be able to record any of his work at the prosecutor's office for fear of federal prosecution, therefore, he would have to memorize his entire analysis of possibly hundreds of images for his trial testimony.  Upon consideration of Boland's testimony, the trial court concluded that viewing the images at the prosecutor's office was not a viable solution.  We agree.

---

14.  *State v. Craig*, at ¶33, quoting *State v. George* (1989), 45 Ohio St.3d 325, paragraph two of the syllabus.

Exhibit 4

{¶38}  What occurred in this case was obviously troubling to the trial court.  It would be akin to the following hypothetic situation, where a defendant is charged with possession of cocaine.  The defendant contends the substance in question is baking soda.  Pursuant to R.C. 2925.51(E), the defendant seeks to have an independent analysis of the substance.  When the defendant's expert laboratory analyst receives the substance, the FBI seizes the substance and threatens to indict the analyst on federal narcotics charges.  Obviously, that analyst is not going to want to receive another sample of the purportedly illegal substance and risk further prosecution.  Moreover, in light of these circumstances, it is extremely doubtful that another analyst would risk federal prosecution and prison time for the purpose of assisting the defendant.  Thus, the defendant is left without his constitutional right to the assistance of an expert to defend against the charges.

{¶39}  In this matter, Brady had a constitutional right to an expert witness.  Due to circumstances beyond his or the trial court's control, Brady was denied the assistance of an expert witness.  Without the services of an expert witness, there was no way to provide Brady a fair trial.  Accordingly, the trial court did not err when it dismissed the charges against Brady.

{¶40}  We recognize there are a limited number of instances where it will be possible to determine that a defendant cannot have a fair trial prior to the trial itself.  However, the unique circumstances of this case qualify this matter as one of those instances.

Exhibit 4

{¶41}  The state's second assignment of error is without merit.

{¶42}  The judgment of the trial court is affirmed.

COLLEEN MARY O'TOOLE, J., concurs,

CYNTHIA WESTCOTT RICE, P.J., dissents with Dissenting Opinion.

_____

CYNTHIA WESTCOTT RICE, P.J., dissents with Dissenting Opinion.

{¶43}  A Crim.R. 12 pre-trial motion to dismiss cannot reach the merits or substance of the allegations as there is no equivalent of the civil rules' summary judgment procedure in the criminal arena.  *State v. Riley*, 12th Dist. No. CA2001-04-095, 2001-Ohio-8618, *4-*5.  Therefore, pre-trial motions to dismiss "can only raise matters that are capable of determination without a trial on the general issue."  Id. at *4; see, also, *State v. Patterson* (1989), 63 Ohio App.3d 91, 95.  It is the sufficiency of the indictment which is judged at this pre-trial stage.  *Akron v. Buzek*, 9th Dist. No. 20728, 2002-Ohio-1960, *4.

{¶44}  Brady claimed that his motion to dismiss "was not based upon any facts in his case," and maintains the trial court was correct in dismissing the matter on his pre-trial motion.  I disagree.  The trial court's ruling was premature and inappropriate at the pre-trial juncture and I must respectfully dissent.

{¶45}  If a claim goes beyond the face of the indictment, then it is improperly presented under Crim.R. 12, and should be presented at the close of the state's case as

Exhibit 4

a motion for acquittal pursuant to Crim.R. 29. *State v. Varner* (1991), 81 Ohio App.3d 85, 86. Under this guideline, it was premature for the trial court to grant Brady's motion to dismiss based on alleged facts that had not yet occurred. Brady's motion went beyond the face of the indictment. At no point in time did Brady challenge the sufficiency of the indictment as far as charging the proper offenses or the constitutionality of the offenses thus charged. Rather, Brady only asserted that his expert witness and all similarly-situated experts would be precluded from effective performance.

{¶46} The majority upholds the pre-trial dismissal on the basis that Brady could not receive a fair trial. In order to reach this conclusion, the majority must speculate first that Brady's expert could not perform his duties without violating federal law (a false assumption in any event because Brady's expert and appellate counsel conceded at the oral arguments that the expert could have viewed the material at the sheriff's or prosecutor's office and performed his tasks there). Second, the majority must accept the assumption that Brady would not be able to find an expert to accomplish the expert tasks required. The final assumption required by the majority's analysis is that the expert would have been able to show that the images in Brady's possession were indistinguishable from virtual pornography images. This amounts to assumptions based on assumptions based on assumptions. It is incredible to me that the majority would allow Brady to escape prosecution under these circumstances. As much as I believe Brady is entitled to a fair trial, I also believe the victims of child pornography deserve to have their alleged perpetrator stand trial.

Exhibit 4

{¶47}  Each aspect of Brady's motion to dismiss speculated that Brady would be precluded from presenting an adequate defense as a result of the chilling effect of the FBI's actions against Boland.  Brady assumed that the State would present the expert testimony of Dr. Farid to support its theory that the materials were photos and depictions of actual children.  Brady assumed that no other expert witness would be willing to testify on his behalf for fear of federal prosecution.  Brady assumed that Boland could not present a convincing case by merely viewing the materials at a law enforcement office as opposed to transporting the materials for his own convenience. The trial court, and the majority, have accepted each and every assumption as fact.

{¶48}  The cornerstone of Brady's argument lies in *Ashcroft v. The Free Speech Coalition* (2002), 535 U.S. 234.  In *Ashcroft*, the Supreme Court held that a prohibition on virtual child pornography is overbroad.  Virtual child pornography does not involve real children but digitally altered or created "children."  In doing so, the Supreme Court determined that the government cannot prohibit speech that may, in some tenuous manner, induce a person to illegal behavior.  Id at 253.  *Ashcroft* did not address the issue as to whether morphed images of children, that is, the alteration of innocent pictures of actual children using digital technological means, is an appropriate ban.  It appears from the record that Boland's activities in creating previous trial exhibits actually involves morphed images of children, activity still illegal under federal law with no exceptions.

{¶49}  Boland testified that one of his tasks as Brady's expert would have been the creation of certain trial exhibits.  Boland stated his "expertise is in the creation and manipulation alteration of digital images."  Boland outlined his work product which would

Exhibit 4

include an analysis as to whether the materials contained images of actual children. Next, Boland would "prepare digital image exhibits that [would] address the technological issues ***." According to Boland, he would violate federal law by both the possession and analysis of the images as well as the preparation of trial exhibits.

{¶50} Presumably, the State's expert would testify that the images depicted actual children and Boland would testify that the images portrayed either virtual children or adults technologically morphed to look like children. Under this theory, Boland's analysis and work product would not violate Ohio or Federal law pursuant to *Ashcroft*.

{¶51} The problem lies in the speculation. Without actually going forward with the trial, it is conjecture to pre-determine Boland's testimony and the impact of the federal law on the effectiveness of that testimony. To that end, the trial court exceeded the scope of a pre-trial motion to dismiss. *State v. McNamee* (1984), 17 Ohio App.3d 175, 176-177. Boland attempts to cure this defect by asserting that all defense experts would be prohibited from adequate function under the federal application of the law. However, the only testimony elicited at the hearing was that of Boland himself. Boland opined that other experts may not want to work under these threatening conditions, thereby violating Brady's Sixth and Fourteenth Amendment rights. Although constitutional issues may be determined prior to trial in some circumstances, where that determination turns on an evidentiary issue and goes beyond the face of the indictment, it is inappropriate for a pre-trial adjudication pursuant to Crim.R. 12. *Lorain v. Slattery* (Sept. 22, 1999), 9th Dist. No. 98CA007140, 1999 Ohio App. LEXIS 4357, *4.

{¶52} The court accepted Boland's presumption that other experts may refuse employment on this basis. However, even Boland himself admitted that he would not

14

Exhibit 4

be precluded from reviewing and analyzing the evidentiary material; he is only prohibited from possessing that material. Boland acknowledged that he could perform the analysis portion of his expert witness activities at the prosecution's office or in the court. Certainly in either of these locales, Brady does not violate any law because he is merely reviewing the material – not possessing the contraband.

{¶53} Therefore, the possession aspect of Boland's expert activities can be cured by allowing Boland to work out of the sheriff's or prosecutor's office. The remaining activities of Boland, the creation of the digital images, would only be illegal under federal law if Boland morphed images of actual children. The problem is that morphed images are still illegal and properly banned under *Ashcroft.* Therefore, Boland is actively violating the law through the creation of these exhibits. However, the law does not preclude Boland from creating virtual pornography to support his expert testimony.

{¶54} Clearly, Brady's motion to dismiss went beyond the face of the indictment. It required the trial court to conduct an analysis into a hypothetical. Hypothetical questions are not appropriate questions of law. The circumstances could change. Boland may have completed his analysis and actually agreed with the State. Brady may have been able to find another expert willing to work under threat of federal prosecution. Boland could physically go to the prosecutor's office and review and analyze the materials. Brady's expert may be able to competently review and advise after viewing the images while they remained in the possession of the State. The same interests which prompted the legislation prohibiting the dissemination of this material,

Exhibit 4

are the same interests that weigh in favor of maintaining a stationary location for the images to be retained during the analysis.

{¶55}  This dismissal has essentially provided Brady and any other like-minded individual with a free pass to possess, observe, disseminate, distribute and manufacture any type of pornography without fear of prosecution.  The ramifications of plunging down the slippery slope of the majority's analysis are many.  Following the reasoning of the majority, any expert can now assert that in order to properly offer an opinion, the expert must essentially recreate the crime.  Certainly the majority would be unwilling to allow this diversion in the arena of a murder trial.  Yet they see fit to do so here.  A murder suspect would not evade prosecution merely because his expert would not be permitted to strike another human being over the head with the murder weapon, yet Brady receives a pass from this court because his expert could not recreate unlawful pornography.  The public interest is certainly better served in protecting the victims of child pornography than in allowing such divertive tactics to succeed at evading prosecution.

{¶56}  For the foregoing reasons, I would therefore reverse and remand this matter.

16

Exhibit 4

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, OHIO

THE STATE OF OHIO,                    :

        Plaintiff,                    :

    -vs-                         :      Case No. 06 CR I 06 0287

ROBERT A. LESCALLEET,                 :

        Defendant.                   :

## JUDGMENT ENTRY

    This case is before the Court on three motions filed by the Defendant. All three motions request the Court to dismiss the charges against the Defendant relating to digital imaging. A hearing was held on the Defendant's motions on January 26, 2007, and March 26, 2007.

    The first Motion to Dismiss, filed on June 28, 2006, asserts that the sections of the Ohio Revised Code under which the Defendant is charged, i.e. R.C. 2907.322(A)(1) and R.C. 2907.323(A)(3), are overbroad, and that certain items therein are protected speech pursuant to the First Amendment to the United States Constitution. This motion was supplemented by a July 28, 2006 motion.

    The Defendant's second Motion to Dismiss, filed on July 28, 2006, supplemented the first motion on overbreadth, as well as asserted that the aforementioned statutes are unconstitutionally vague.

    The Defendant's third Motion to Dismiss, also filed July 28, 2006, asserts that the Court should dismiss the charges because the Defendant cannot obtain a fair trial. Specifically, the Defendant is not able to obtain an expert to examine the alleged

Exhibit 5

pornographic images because to do so, said expert would be subject to prosecution under federal authority.

The Defendant bases his overbreadth argument on the United States Supreme Court decision in *Ashcroft v. Free Speech Coalition* (2002), 535 U.S. 234, 122 S.Ct. 1389, 152 L.Ed.2d 403, as well as the Ohio Eleventh District Court of Appeals decision in *State v. Tooley* (2005), 11th Dist. App. No. 2004-P-0064, 2005-Ohio-6709.

In *Ashcroft*, the United States Supreme Court held that virtual child pornography was protected speech under the First Amendment to the United States Constitution and, therefore, could not be banned under the child-pornography statutes. *Ashcroft*, supra, at 253-256.

The U.S. Supreme Court ruled that two sections of the Child Pornography Prevention Act of 1996 ("CPPA"), Sections 2256(8)(B) and (D), were unconstitutional. Id. "Section 2256(8)(B) prohibits 'any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture' that 'is, or appears to be, of a minor engaging in sexually explicit conduct.'" Id. at 241. The Supreme Court determined that the statute was overbroad because it attempted to ban protected speech. Id. at 256.

Section 2256(8)(D) banned "depictions of sexually explicit conduct that are 'advertised, promoted, presented, described, or distributed in such a manner that conveys the impression that the material is or contains a visual depiction of a minor engaging in sexually explicit conduct.'" Id. at 257. The Supreme Court also determined that Section 2256(8)(D) was overbroad due to the fact that it prohibited a significant amount of protected speech. Id. at 258.

Exhibit 5
2

The Court in *Ashcroft* stated that "[t]he overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." Id. at 255. The Supreme Court further stated that "[w]here the defendant is not the producer of the work, he may have no way of establishing the identity, or even the existence, of the actors." Id. at 255-256.

In *State v. Tooley*, the Ohio Eleventh District Court of Appeals held, based on *Ashcroft*, supra, that the statute making it a criminal offense to pander sexually oriented matter involving a minor is unconstitutionally overbroad, and the statutory provision making it a criminal offense to possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity is unconstitutionally overbroad. *Tooley* at syllabus.

The *Tooley* court found, based on the testimony of the defendant's expert, as well as statements made in the Congressional findings, that experts may not be able to distinguish between the quality of virtual pornography and child pornography using actual children; therefore, asking a jury to make such a determination by simply viewing the image in the courtroom is "patently unfair to the defendant." *Tooley*, at ¶ 40.

Ohio Revised Code Section 2907.322 provides that "

(A) No person with knowledge of the material or performance involved, shall do any of the following:  * * * (5) Knowingly solicit, receive, purchase, exchange, possess, or control any material that shows a minor participating or engaging in sexual activity, masturbation, or bestiality; * * * (B)(3) In a prosecution under this section, the trier of fact may infer that a person in the material or performance is a minor if the material or performance, through its title, text, visual representation, or otherwise, represents or depicts the person as a minor.

R. C. 2907.322. Despite the fact that several Ohio appellate districts have upheld R.C. 2907.322 as constitutional, the language of the statute mirrors the "appears to be"

Exhibit 5
3

language which the U.S. Supreme Court held unconstitutional in *Ashcroft*. See *Tooley*

at ¶ 48-52. Essentially, R.C. 2907.322 allows the trier of fact to make an inference as to

whether or not an image contains minors; the exact approach that the U.S. Supreme

Court prohibited. See *Tooley* at ¶ 53. Accordingly, the *Tooley* court found R.C.

2907.322 to be unconstitutionally overbroad. Id. at ¶ 54.

> R.C. 2907.323 provides that
>
> (A) No person shall do any of the following: * * * (3) Possess or view any material or performance that shows a minor who is not the person's child or ward in a state of nudity, unless one of the following applies: (a) The material or performance is sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, clergyman, prosecutor, judge, or other person having a proper interest in the material or performance. * * * (b) The person knows that the parents, guardian, or custodian has consented in writing to the photographing or sue of the minor in a sate of nudity and the manner in which the material or performance is used or transferred.

R. C. 2907.232. Despite the fact that several Ohio appellate districts have also

concluded that R.C. 2907.323 is not unconstitutional, the Eleventh District in *Tooley*

disagreed. See *Tooley* at ¶ 62. The Supreme Court of Ohio determined that the

culpable mental state required for a violation of R.C. 2907.323(A)(3) is reckless. *State*

*v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363, paragraph three of the syllabus.

The *Tooley* court found that R.C. 2907.323(A)(3) coupled with the holding in *Young*,

supra, "effectively chills the First Amendment right of individuals to view virtual child

pornography," and accordingly, found that R.C. 2907.323(A)(3) to be unconstitutionally

overbroad. *Tooley* at ¶ 69-70.

Exhibit 5

Turning to the present case, the Court heard testimony on behalf of the Defendant from Dean Boland, a licensed attorney and expert in the analysis of digital imaging. Boland testified about the ways in which digital images are created, as well as the ways in which digital images can be altered. Boland stated that the alterations for digital images are infinite and that that no method exists to determine if a digital image has been altered.

Particularly, Boland surmised that no method of analyzation exists, nor does any expert have the capacity, to determine if alterations have been made to a digital image. That is, there can be no reasonable degree of digital expert certainty. Finally, Boland concluded that no computer software or hardware exists that can distinguish between an original and an alteration of a digital image.

Boland demonstrated to the Court how easily a digital image can be manipulated without detection to make a person appear younger or older. In essence, Boland testified that it is virtually impossible to determine an original digital image unless a live witness can identify it from personal knowledge. Boland further testified that manipulation of a digital video image requires a higher skill level and is considerably more difficult than the manipulation of a digital image.

With regard to defense expert witnesses, Boland testified, based on his personal experience, that the federal government will not permit a defense attorney or defense expert to view or recreate the virtual child pornographic images for trial purposes; however, the prosecuting attorney or state's expert is permitted to do so. Finally, Boland testified that it is impossible to determine what is contained in a file, based upon the file name, without actually opening the document.

Exhibit 5

Agent Cameron Bryant of the Department of Homeland Security, special agent in immigration customs enforcement, testified on behalf of the State. Bryant prepared a report on the Defendant's case following his forensic investigation of the Defendant's computers conducted on July 8, 2005. Bryant's report, which is based solely on inadmissible hearsay unless authenticated by a live witness with actual knowledge as to the identity of the victim, details the analyzation of three computers found in the Defendant's home; a Dell Dimension 8400 ("8400"), a Dell Dimension 4100 ("4100"), and a Hewlett Packard HP A700N ("HP"). The Defendant resides with his mother, father, brother and brother's girlfriend.

The investigation conducted on the 8400 resulted in negative findings.

The forensic examination of the HP revealed eighteen (18) images of suspected child pornography, (4) digital movies containing child pornography, and one digital movie and eight (8) digital images containing bestiality. Two images, identified as being known by the National Child Victim Identification Program ("NCVIP") were also identified on the hard drive. The users for the HP were identified as "angela," "hoss," and "Josh," and no one was listed as the registered owner of the Windows XP operating system.

The forensic examination of the 4100 revealed five (5) images of suspected child pornography, eight (8) digital movies containing child pornography, one digital movie containing bestiality, and one image identified as being known by the NCVIP. The users for the 4100 were identified as "Jimmy," "Josh," and "Ryan." Josh LesCalleet, the Defendant's brother, is listed as the registered owner of the Windows XP operating system.

Exhibit 5

Bryant testified that he is familiar with several series of child pornographic images and videos; however, he has no personal knowledge of those contained in the digital images and videos obtained from the computers found in the Defendant's home. Bryant testified that the three known NCVIP images detected on the Defendant's computers were from the Sabin series, originating in Brazil. The agent who could identify the child victims in Brazil from the images and videos is retired and no longer is available to testify.

Based upon the record of this case, this Court does not see how the State can legally circumvent *Ashcroft* and *Tooley* unless it produces live witnesses who can testify from first hand knowledge as to the images being real children. Boland's testimony, as well as the testimony of Bryant on behalf of the State, both confirm that there is no other way to differentiate between virtual images protected under *Ashcroft*, supra, versus actual images of child pornography which are prohibited. In fact, Bryant testified that he does not have personal knowledge of any of the alleged children in the images or movies and cannot testify that they are real children. Therefore, based upon *Ashcroft*, and *Tooley,* if the State does not identify, within thirty (30) days, which witnesses it will produce at the time of trial, with *actual knowledge* that the children contained in the seized images and movies are in fact *real* children, the indictment will be dismissed.

Moreover, should the State produce witnesses who can authenticate the children as real, the State shall secure the proper "immunities" from both the federal and state prosecution for the Defendant's attorney, as well as any defense expert so they may be permitted to view the alleged child pornographic material prior to trial in order to prepare a defense on behalf of the Defendant.

Exhibit 5
7

Should the State fail to comply with either of these "due process" requirements, the charges will be dismissed.

Dated: June 5, 2007.

W. DUNCAN WHITNEY, JUDGE

The Clerk of this Court is hereby Ordered to serve a copy of this Judgment Entry upon the following by ☐ Regular Mail, ☐ Mailbox at the Delaware County Courthouse, ☐ Facsimile transmission

PAUL L SCARSELLA, ASSISTANT PROSECUTING ATTORNEY
O. ROSS LONG, DEFENSE COUNSEL

Exhibit 5
8

**IN THE COURT OF COMMON PLEAS, DELAWARE, OHIO
CRIMINAL DIVISION**

State of Ohio, :
:
    Plaintiff, :
:
vs. :   Case No. 06CR-I-06-287
:
Robert Lescalleet :   Judge Whitney
:
    Defendant. :

### JUDGMENT ENTRY OF DISMISSAL

For good cause shown, the Court hereby orders the above styled case number

dismissed.

Judge W. Duncan Whitney

Cc:  Assistant Prosecuting Attorney
     O. Ross Long, Attorney for Defendant
     Adult Court Services

TERMINATION CODE

Exhibit 6

FIGURE 1

### CASES ADMITTING TESTIMONY BY DIGITAL IMAGING EXPERTS THAT DISTINGUISHING LEGAL FROM ILLEGAL IMAGES OF APPARENT CHILD PORNOGRAPHIC CONTENT IS IMPOSSIBLE VIA VISUAL EXAMINATION



**STATE CASES**

Ohio v. Sparks CR-2002-12-3669 (2004, Summit County)

Ohio v. Simms 2003 CR 98 (2004, Columbiana County)

Ohio v. Huffman B-0401503 (2004, Hamilton County)

Ohio v. Beam  04 CR 00379 (2004, Clermont County)

New Hampshire v. Richards 03-S-1321

Ohio v. Tooley C03CR 0547 (2004, Portage County)

PA v. Stewart CP-14-CR-323-2006 (Centre County) Protective Order

Ohio v. Oliver CR-2005-11-4175 (Summit County)

Ohio v. Heilman 03 CR 458 (2003, Trumbull County)

**FEDERAL CASES**

U.S. v. Shreck 03-CR-43-H (N. Dist. Oklahoma)

U.S. v. Hill 4:04 CR 57 (Eastern District of Texas)

U.S. v. Watzman 4:04 CR 57 (Eastern District of Texas)

U.S. v. Frabizio 03-10283-NG (2003 Dist of Mass).

Government digital imaging experts testified distinguishing legal from illegal images of apparent child pornography impossible

Defense digital imaging experts testified distinguishing legal from illegal images of apparent child pornography impossible

Courts in these cases authorized the use of digital image exhibits of apparent contraband to establish the indistinguishability of images depicting actual minors versus those that merely "appear to depict" a minor