IN THE FEDERAL DISTRICT COURT FOR THE DISTRICT OF DELAWARE

UNITED STATES OF AMERICA

        Plaintiff,

vs.                                                CASE NO. CR 07-157-SLR

PHILIP GRAHAM,

        Defendant.

---

## MOTION IN LIMINE REGARDING AUTHENTICATION

      PHILIP GRAHAM respectfully requests this court enter an order that that the government must comply with the rules of authentication regarding the presentation, use and admissibility of its image or video evidence as further explained in the attached brief.

      Specifically, Graham is requesting this court issue an order that

1. the government is required to authenticate all evidence including the charged items or similar evidence in compliance with Evid.R. 901 and all relevant case law:

2. The rule of hearsay applies to the government's witnesses, whether fact or expert witnesses including those whom it wishes to offer to authenticate its evidence including the charged items or similar evidence:

3. The government may not offer hearsay testimony to authenticate its evidence including the charged items or similar evidence; and

4. A witness with no personal knowledge regarding the creation of any of the charged items, but whom can identify some or all objects depicted in that charged item, cannot serve to authenticate that charged item or similar evidence.

## LAW AND EXPLANATION

Evid. R. 901 states in pertinent part.

"(a) General provision.  The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Evid.R. 1001(2) defines photographs as follows:

"(2) Photographs.—'Photographs' include still photographs, X-ray films, video tapes, and motion pictures."

The discussion in this motion refers to the charged items the government intends to authenticate via either fact or expert testimony.

Photographs are distinct from digital images

The fact that digital images are much more easily manipulated than traditional photographs has been recognized by the legal community for more than ten years.

"[T]he potential for incredible abuse associated with [digital imaging] is, or should be, troubling to the legal profession in particular.  Computers are now able to give the operator complete control over the elements in a [digital image].....It is impossible to tell whether [digital] image comes directly from a camera or has been enhanced or altered by a computer. This reality has precipitated a steady erosion in the trust of the photographic image over the past decade.

"The fact that photographs have always been doctored does not diminish the impact of today's [digital image] manipulation capabilities.....[Digital image] manipulation is both faster and easier. Unlike conventional retouching which typically requires several stages and chemical processes, electronic manipulation can be accomplished within seconds or minutes on the computer....[C]omputer manipulation is also more precise than manual retouching [and] the process is virtually undetectable....Computers can alter a [digital image] beyond recognition with detection nearly impossible."  (A Picture is Worth a Thousand Lies, (1992), 18 Rutgers Computer & Tech. L.J. 365).

"There are significant differences, however, between traditional photographs and digital images that may necessitate different evidentiary treatment than that normally given to traditional photographs. The digital image creation process and the susceptibility of digital images to manipulation make digital images sufficiently different from photographs to necessitate different treatment under the Federal Rules of Evidence." (<u>Can Juries Really Believe What They See?  New Foundational Requirements for the Authentication of Digital Images</u>.  (2002) 10 Wash. U. J.L. & Pol'y 267).

"Thus, it is impossible to determine which image is a first generation image and is therefore the 'original.'  The lack of an 'original' for comparison with the offered image reduces the opportunity to verify that the image has not been altered or has only been altered in an acceptable manner, thereby increasing the likelihood that *changes will not be discovered unless the proponent of the image reveals them*."  (Id).  (Emphasis added).

"The exclusion of digital imaging--explicitly labeled a 'photographic system' in the Commentary--from the category of 'Photograph' indicates that the Advisory Committee [to the rules of authentication] may have recognized the difference between traditional photographs and digital 'photographic systems.'" (Id).

Some legal scholars have advocated that digital images deserve a different rule of authentication than that traditionally used for photographs in light of their higher susceptibility to undetectable alteration.  "[T]estimony of a witness with knowledge, often used to authenticate photographs via the 'fair and accurate portrayal' testimony, is *insufficient* for authentication of digital images.  [T]he compression process may distort the image so that a bystander might think that the image was a fair portrayal, but the scene might be slightly exaggerated.  Witness testimony limited to fair and accurate portrayal testimony *omits important information* regarding the digital camera settings, including the compression ratio, storage medium, and opportunity for manipulation....[T]he 'silent witness theory,' permitted under the Federal Rules of Evidence, is *unacceptable* for digital images." (Id).  (Emphasis added).

Prosecutors recognized this inherent ease of undetectable manipulation as early as 1999. "Digital camera users can enhance an image without professional assistance by using one of many software programs; users can easily enhance digital images with just a few clicks of the mouse. While photo enhancement is generally accepted practice, photo 'manipulation' is not." (Digital Imaging Technology and the Prosecutor, Prosecutor, Published in the Jan.-Feb. 2000 issue, at 26, 27).

The rule of authentication does not address digital images, precisely the evidence at issue in this motion. The court's options for the handling of this evidence then are as follows:

1. Apply the traditional rule of authentication applicable to photographs to the charged items and other similar evidence.
2. Apply a rule of authentication that recognizes the universally accepted fact of the susceptibility of digital images to undetectable manipulation.
3. Apply a rule of authentication that permits a witness to testify as to what that witness was allegedly told by someone else about the authenticity of charged item or similar evidence.
4. Apply a rule of authentication that permits any witness to authenticate any of the charged items or similar evidence if that witness can identify one or more objects depicted in the item.

Each of these approaches and its potential effects will be discussed in turn.

1. <u>Apply the traditional rule of authentication applicable to photographs and video tapes to the charged items and other similar evidence.</u>

<u>Federal Cases and the traditional rule regarding the authentication of photographs</u>

"[P]hotographs must be authenticated prior to being admitted into evidence. (United States v. Blackwell, 694 F.2d 1325, 1330 (D.C.Cir.1982)). The district court was within its discretion when it refused to accept the unauthenticated photographs into evidence as authentication is a necessary precondition to admissibility. (Id).

The government is required to comply with the rule of authentication in the same way that Mr. Graham is. "When offering this photograph into evidence, the State did not offer any authentication or foundation to show that the person in the photograph was the defendant, that the photograph was real (and not doctored), or provide any background as to the circumstances under which the photograph was taken. The admission of this photograph raised unsubstantiated questions about the defendant's criminal history, threatening his assertions of having a law-abiding past." (Depew v. Anderson (2003),

311 F.3d 742).

*Exculpatory evidence* is excluded if it fails to meet the rule of authentication.  Absent authentication, the trial court could exclude arguably exculpatory photograph that was sequentially numbered to three others, allegedly showing defendant holding gun, that were admitted against defendant in attempted murder and assault prosecution; sequential numbering did not establish that fourth photo was taken at same time as preceding ones.  (Cochrane v. McGinnis, C.A.2 (N.Y.) 2002, 50 Fed.Appx. 478, 2002 WL 31501358  certiorari denied 123 S.Ct. 2222).

The best evidence rule applies to the charged items as it did photographs.  (U.S. v. Stockton (1992), 968 F.2d 715).  The court in Stockton found that although the rule does not typically apply to photographs, "this case is one of those relatively rare instances in which the photographs contents are sought to be proved." (Id).  The court bolstered this conclusion by pointing out that a DEA agent had "testified to the contents of the photographs and specifically read from the photographs" therefore putting the contents of the photograph at issue.  (Id).  In this case, the government is using digital images whose contents are sought to be proved.  In fact, if those contents are not proved, the government's case is lost.

The government does not know and cannot know whether the charged items are originals or duplicates, therefore, they violate Fed.R.Evid. 1002.  As duplicates (or more accurately unknown original or duplicate) they cannot be admitted if  "(1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." (Id).  John W. Strong et al., McCormick on Evidence §  236, at 74-75 & n. 12;  see e.g., Greater Kansas City Laborers Pension Fund v. Thummel, 738 F.2d 926, 928 (8th Cir.1984);   United States v. Gipson, 609 F.2d 893, 894 (8th Cir.1979) (per curiam);   United States v. Rangel, 585 F.2d 344, 346 (8th Cir.1978) (per curiam);  Janet Boeth Jones, Admissibility of Duplicates Under Rules 1001(4) and 1003 of the Federal Rules of Evidence, 72 A.L.R.Fed. 732, § § 2, 3(a) (1985).  The government's entire case is their claim the charged items are what they appear to be, prohibited by the

statute. Under those circumstances, it is unfair to admit these items without requiring they be authenticated.

2.  <u>Apply a rule of authentication that recognizes the universally accepted fact of the susceptibility of digital images to undetectable manipulation</u>.

It cannot be argued, technologically, that the charged items are created, stored and subject to the same difficulty of undetectable manipulation as film photographs.

"[Even a] bystander might think that the [digital] image was a fair portrayal, but the scene might be slightly exaggerated. [Such testimony] omits important information regarding the digital camera settings, including the compression ratio, storage medium, and opportunity for manipulation...." (<u>Can Juries Really Believe What They See? New Foundational Requirements for the Authentication of Digital Images</u>, supra).

Applying a digital-image-specific standard suggested by legal scholars would require more than just a bystander who observed the creation of the image or video. For example, it could require the equivalent of chain of custody testimony. Evidence about where the item has been since it was created, who created it, under what circumstances, what type of equipment was used, how that equipment was calibrated, the background of the equipment operator, etc. Coincidentally, these requirements track many of those agreed upon by the Scientific Working Group on Imaging Technology (SWGIT). SWGIT consists of photographers, scientists, instructors, and managers from more than two dozen federal, state, and local law enforcement agencies, as well as from the academic and research communities. (http://www.theiai.org/swgit). SWGIT guidelines are regularly updated and have been peer reviewed and adopted by local, state, federal and international law enforcement agencies for more than five years. A companion to those guidelines have been drafted and adopted by the Scientific Working Group on Digital Evidence (SWGDE). The Chairman of SWGIT is Richard Vorder Bruegge, the government's leading digital imaging expert witness in child pornography cases across the country. Those guidelines represent the best practices in law enforcement for establishing and maintaining the

authenticity of digital image evidence. Applying all or some subset of those guidelines is a reasonable approach for the court to take in ruling upon the authenticity of the charged items or similar evidence. (The purpose of SWGIT is captured in this quote by its current Chairman, Dr. Richard Vorder Bruegge, who is the FBI's top digital imaging/video expert. "SWGIT was created to provide leadership to the law enforcement community by developing guidelines for good practices for the use of imaging technologies within the criminal justice system. A goal of the SWGIT is to engage the entire law enforcement imaging community in the development of these guidelines.") (Id).

3. <u>Apply a rule of authentication which permits a witness to testify as to what that witness was allegedly told by someone else about the authenticity of charged item or similar evidence.</u>

This approach permits a witness to testify as to what someone else told them about the authenticity of a charged item. This approach can be labeled as "authentication by hearsay."

Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." (Evid.R. 801).

Although the exceptions to the hearsay rule are many, none permits hearsay testimony seeking to authenticate a photograph or digital image.

There are no federal or state cases permitting authentication of photographs, digital images or videos via hearsay. In one case in which such an approach was attempted, it was flatly rejected. <u>In re Citric Acid Litigation</u>, 191 F.3d 1090, 1098 n. 3 (9th Cir.1999) the defendant sought to admit *exculpatory* statements in a search warrant. The court excluded the contents of the search warrant. "In addition to the search warrant being hearsay, defense counsel failed to provide any authentication for it, and the witness through whom counsel attempted to introduce the warrant had *no personal knowledge of its making*." (Id). (Emphasis added).

The attempted use of hearsay testimony to authenticate the charged items and related evidence deserves heightened scrutiny because the authenticity (or not) of the items implicates Graham's First Amendment rights. (<u>Ashcroft v. Free Speech Coalition</u> (2002) 535 U.S. 234). There is simply no

exception in the rule of hearsay or authentication to permit hearsay testimony that seeks to authenticate any of the charged items. If the court were to permit such hearsay authentication, it then creates a justification for dismissal as the government cannot establish Graham's knowledge regarding the illegal nature of those items.

Assuming the government is entitled to establish *its* knowledge about the authenticity of the charged items via hearsay, that establishes Graham's inability to obtain knowledge of the authenticity of the charged items. Assuming arguendo that he viewed the charged items, he had no access to the government's hearsay information about these items. Therefore, since that is the only way it can know its evidence is authentic, Graham could not have known that and the government cannot establish his knowledge – a necessary element of the offense. At the time Graham possessed the charged items, he was not privy to the government's hearsay witness(es). Therefore, he cannot have known the charged items were prohibited since the only way to know that (and the way the government knows that) is by access to hearsay from a source inaccessible to Graham. That is an additional reason to exclude such hearsay as it is irrelevant to the knowledge element of the offense as well.

4. <u>Apply a rule of authentication that permits any witness to authenticate any of the charged items or similar evidence if that witness can identify one or more objects depicted in the item.</u>

The final option for the court in handling the charged items is to permit the government to present testimony of a witness who would be able to testify that she could identify the alleged victim and the setting depicted in one or more of the charged items. This approach represents a new rule of authentication with no logical stopping point and an invitation for fraud by litigants and speculation by the court in its ruling.

In past cases, the government has presented FBI agents and other detectives to "authenticate" its images. It is presumed it intends to follow that same procedure here. Its use of these agents follows a predictable path. The agent testifies that he can authenticate a given digital image or video because he can do the following:

1. Identify the alleged minor in the item; and/or

2. Identify the alleged adult perpetrator in the item; and/or

3. Identify the depicted location as indicated by the apparent background in the image or setting (e.g. the furniture, wallpaper, etc as depicting a residence the agent or detective visited while investigating that particular case).

The detectives or agents, of course, never testify they were present when the image or video itself was created. Therefore, they attempt to authenticate the item by identifying all the key elements in the image. This motion seeks an order from the court that such a method of attempted "authentication" is inappropriate.

The examples on the following page are just a few examples of why such a method is not suitable.

Hearsay authentication permits authentication of this image can be authenticated by someone familiar with the launch of the capsule Friendship 7 and actor Jack Nicholson seated next to President Kennedy

1

Hearsay authentication permits authentication of this image can be authenticated by someone familiar with actor Robert De Niro and the apparent time in history when photographs of this type were being produced.

2

Hearsay authentication permits authentication of this image can be authenticated by someone familiar with what singer Jessica Simpson looks like along with the trophy awarded to an Oscar winner and the setting in which those awards are distributed.  Jessica Simpson has never been nominated, much less won, an Academy Award.

3

Hearsay authentication permits authentication of this image can be authenticated by someone familiar with what President Bush and his father look like along with the setting on this New Orleans street following the flood aftermath of hurricane Katrina.

4

These exhibits contain known public figures in contemporary or historically familiar settings that are nonetheless not authentic. If the government is permitted to use an agent or detective to testify as outlined above, then any party could use a witness to authenticate these items even though they are not authentic. The manufacture of "authentic" evidence, under this rule, can be accomplished by creating an image of a person, place or object that is recognizable to the offered authenticating witness. Any image depicting a person the witness has met in a setting the witness has seen is de facto authentic. The radical departure from the rules of authentication and hearsay this rule represents has no logical stopping point. It establishes an exception to the authentication and hearsay rules that defendants will be entitled to utilize as well.

The government would protest if a defendant in a future murder case attempted to admit unauthenticated alibi images placing him at Disney World in Florida, the day the charged murder took place in Delaware. The government would not accept as proper authentication the testimony of the defendant's mother that she found digital images or digital video of the defendant on a CD in the defendant's apartment after he was arrested and she can both identify her son's image as well as the image of some location in Disney World. She is still guessing that the image is authentic and nothing more. She becomes a transparent vehicle for what is really a rule that digital images are self-authenticating, which they are not. Even a witness who has not seen the defendant in two years, but knows what he looks like, can authenticate the image provided they are also familiar with the particular location at Disney World depicted in the image. This is an example of how merely being able to identify people and objects in an image is not suitable authentication. Such a standard is an invitation to the introduction of unauthentic and fraudulent evidence that is still in compliance with the government's proposed rule. In fact, such a rule necessarily means that the court must accept as authenticated Exhibits 1-4 to this motion upon proper testimony as indicated in the caption to each image. (See Exhibits 1-4, infra.)

The government may argue it can present witnesses who can authenticate the charged items via

hearsay statements from individuals involved in creating the items.  For example, an agent or detective can repeat the confession of the alleged perpetrator in an image or witness statement of an alleged victim allegedly depicted in the charged item.  Or, in the alternative, the witness can rely upon that hearsay to testify as to "their personal knowledge" that the charged item is authentic.  The U.S. Supreme Court has explicitly held such testimony, reliant upon obvious hearsay, as *in*admissible.

"[T]he Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.  The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts.  Rather, the 'right ... to be confronted with the witnesses against him,' is most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding." (Crawford v. Washington (2004), 541 U.S. 36).

"Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes." (Id).  The Supreme Court's rationale here is identical that which this court should apply in issuing a clear order to prevent the government from offering such testimony.  Any argument that the ability to identify elements in an image is "reliable" rejects Crawford's underlying rationale.

"[Some] courts [have] relied on the fact that the witness's statement was made to police while [o]ther courts routinely rely on the fact that a prior statement is given under oath in judicial proceedings....That inculpating statements are given in a testimonial setting is not an antidote to the confrontation problem, but rather the trigger that makes the Clause's demands most urgent.  It is not enough to point out that most of the usual safeguards of the adversary process attend the statement, when the single safeguard missing is the one the Confrontation Clause demands."  (Id).  This finding is an answer to the government's desire to offer statements by agents or detectives like "the defendant confessed" or "the defendant plead guilty" referring to the alleged perpetrator in an image found on

Graham's computer.

"Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination....[Testimonial] at a minimum [applies] to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." (Id).

In Crawford, the trial court admitted a testimonial statement against the defendant "despite the fact that he had no opportunity to cross-examine her." (Id). The court found "[t]hat alone is sufficient to make out a violation of the Sixth Amendment." (Id). Likewise, here, statements of alleged victims or alleged perpetrators in the indicted items are likewise excludible to avoid the same Sixth Amendment violation. When "testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." (Id).

The government would not consent to Graham exercising such a hearsay advantage against it in violation of Crawford. For example, the government would not consent to the admission of images providing an alibi for Graham even if supported by a defense witness who could recognize Graham and the location depicted in the image. Imagine Graham's relative testifying that he found a CD of images of Graham of unknown origin and authenticity showing Graham at some out of state location on *each date* upon which each of the charged items was created on the computer upon which they were found. His presence out of Delaware obviously represents an alibi as to him being the person involved in the placing of those items on the computer. It also is evidence relevant to his lack of knowledge that the charged items existed on the computer at all.

The government would obviously demand this court exclude such testimony and such images unless Graham presented a witness who was present when the alibi images were captured and can establish their authenticity. The government would be right to do so. The court would be required to

grant its motion to exclude. (See Evid. R. 801, 901 and Crawford, infra). As Crawford indicates, the rule of hearsay exists to prevent the admission of testimony for which there is no meaningful cross examination and no guarantee of trustworthiness. Likewise, Crawford and the rule of hearsay prevent a witness from claiming "personal knowledge" about the authenticity of a piece of evidence when that personal knowledge is reliant in whole or in part upon hearsay. The rule of authentication exists to prevent the use of potentially fraudulent evidence. There is a reason for these rules and that should not be overlooked when analyzing Graham's argument in this regard.

The application of the hearsay authentication rule disables the court from ruling on relevancy

Without requiring the government to authenticate their evidence consistent with the traditional rules, the court is disabled from ruling on any defense argument as to relevance of any of the charged items or other related evidence.

If an offered item of evidence *does not contain* an actual minor, no matter how it was created, it is irrelevant to this matter. (i.e. it does not meet any of the definitions of child pornography contained in 18 U.S.C. 2256(8)). If an offered item of evidence *does* contain all or some portion of the image of an actual minor, the relevancy argument is different. It *may* meet the definition in 18 U.S.C. 2256(8)(C). If an image or video item contains only an "apparent" minor, it is irrelevant and constitutionally protected. (See Free Speech Coalition). If Graham enters a relevancy objection to any of the government's offered items, the court cannot rule upon that objection unless it knows whether the offered item of evidence contains an actual minor. And, it cannot know this unless the item has been properly authenticated. And so it is that authentication must come first, as a condition precedent to admissibility just as indicated in Evid.R. 901 et seq. And, no case law or rule supports that authentication being achieved via any hearsay testimony. No case law or rule supports *the jury* being permitted to authenticate evidence in this case or any case.

In the end, Graham's request is straightforward. He is simply asking the court, at a minimum, to apply the longstanding and accepted rule of hearsay as it applies to any testimony about the charged

items or similar evidence. He is also respectfully requesting the court not create a new rule of hearsay authentication or permit the government to evade the existing rule regarding the authentication of its offered evidence via hearsay testimony. He is asking that the Equal Protection clause of the U.S. Constitution apply to him mandating the application of the authentication rules as with any image evidence in any other federal criminal case.

The effect on a party's case of the proper application of the rules of authentication and hearsay is irrelevant.

The government may argue that the application of the rule of authentication and hearsay as required by case law and the rules would make its task of proving its case difficult. Even if true, it is not a valid legal argument against the application of those rules. The normal operation of the rules of authentication and evidence is the court's only concern, not the impact on either parties' ability to prove their case.

The government cannot be allowed access to new and different rules of authentication depending on the nature of the charged offenses for convenience sake or any other reason. (Equal Protection Clause of the United States Constitution). It cannot be permitted an exception to the hearsay rule that does not exist merely because it is burdensome for it to present the proper witness under the rule. Autopsy photos in murder cases, even though gruesome, are regularly admitted as proper evidence. Defendants in those cases cannot avoid the normal operation of the rules of relevance merely because it may be harmful to their defense. Likewise, the government here cannot be provided an advantage that the rules do not allow.

Using this logic regarding proof difficulty if the rules are applied to its evidence, Graham would be entitled to an exemption from the operation of the rule related to 404(b) evidence because of its effect on his ability to prevail in this case. He can cite the difficulty of mounting his defense if 404(b) evidence is admitted against him. The negative effect of the proper application of the rules to one's case is not a legal argument the court can properly consider. With two minutes left in the fourth quarter

of an NFL football game, the team losing by 28 points needs more time. NFL rules do not provide for the arbitrary addition of more time no matter the outcome the application of that rule may compel.

The government can authenticate its evidence by complying with the traditional rules and case law regarding authentication and hearsay. Simply put, it need only produce a witness who was present when the item was created, is depicted in the item or produced the item itself as the law currently stands on authentication. (Evid. R. 901).

The "Jury Can Decide" Cases are Inapplicable to This Motion In Limine

There are various federal court decisions in child pornography cases that stand for the proposition that the "jury can decide" if a given image is or is not of an actual minor. "Thus, *at this time*, it appears that no circuit requires that expert evidence be introduced to prove the reality of children portrayed in pornographic images." (United States v. Farrelly (6th Cir.2004) 389 F.3d 649, 654, fn. 4.). (Emphasis added). "Juries are still capable of distinguishing between real and virtual images." (Id). Farrelly and cases like it do not stand for the proposition that such testimony can never be required. These cases are now inapplicable to this argument and technologically out of date. The government itself has admitted that it is no longer possible *even for its own experts* to distinguish legal from illegal items of apparent child pornography. (See [u.s. v. Frabizio]).

Farrelly, the cases cited to support it and the cases citing to it are responding to arguments related to *already admitted* evidence. Along with being procedurally inapplicable to Graham's authentication argument, that line of cases also suffered from the lack of any digital image exhibits for examination by the courts in reaching its conclusion. (Figure 1). Graham's argument is not about the sufficiency of the government's already admitted evidence that is addressed by this line of "jury can decide" cases.

We are at a pre-admission stage of this case discussing the anticipated evidence by the government. None of the "jury can decide" cases has anything to say about the proper method for the authentication of those images prior to their admission. None of those cases held that it was proper for

the government to use hearsay to authenticate evidence.

Authentication is not equivalent to "Chain of Custody"

The government may also argue in order to authenticate the digital images in this case, it must only show that the item(s) being submitted as exhibits were found on and taken from Graham's computer. This testimony only answers the question as to where the offered evidence was located when the government found it. It does nothing to answer the question about the item's authenticity. Using this logic, a government witness in an art theft case can authenticate a Picasso painting by testifying they found a painting during a search that contained colors and the word "Picasso" painted on it. Then, it is left to the jury to decide if the painting was a real Picasso and therefore, convict the defendant. This approach is not the rule of authentication and unworkable as well. Replacing Evid.R. 901 with what is known as chain of custody effectively deletes the rule of authentication itself. All evidence is "found" somewhere. Chain of custody evidence about images or videos provides no information about whether those items do or do not depict an actual minor. Therefore, "location found" testimony provides nothing to establish the relevance of the "found" item.

The government may argue that the digital images are not being introduced in order to prove some other fact. This is proveably false. The charged items are being introduced to prove they were possessed and they are authentic (i.e. Prohibited by the statute). If the government is not offering the items for those purposes, they are irrelevant to this case.

Hearsay authentication suffers from both logical inconsistency and inconsistency with the rules of evidence, authentication, hearsay and controlling federal authority regarding all three.

When considering this motion, it is important to appreciate that the rule of authentication applied to crime scene or accident scene images is a different matter than applied to the charged items in this case. The overwhelming number of cases in which photographs are authenticated, they are merely *some* part of the evidence in that case and not prohibited to possess themselves. In cases such as this one, the images *are* the case. The authenticity of the charged items in this case is the difference

between the exercise of Graham's First Amendment rights and prison. The errant admission of one or more photographs in a typical case may be harmless, in this case it determines the outcome. This is why requiring the government to comply with the rule of authentication, without resorting to hearsay, needs to be addressed in a motion in limine prior to trial.

In conclusion, Graham is respectfully requesting this court order that 1. the government is required to authenticate all evidence including the charged items or similar evidence in compliance with Evid.R. 901 and all relevant case law: 2. The rule of hearsay applies to the government's witnesses, whether fact or expert witnesses including those whom it wishes to offer to authenticate its evidence including the charged items or similar evidence: 3. The government may not offer hearsay testimony to authenticate its evidence including the charged items or similar evidence: and 4. A witness with no personal knowledge regarding the creation of any of the charged items, but whom can identify some or all objects depicted in that charged item, cannot serve to authenticate that charged item or similar evidence.

/s/
Clayton A. Sweeney, Jr.

DE Bar No. 3359
PO Box 55441
Philadelphia PA 19127-5440

(215) 509-1012
(215) 509-1013 (f)
clayt2@verizon.net

**PENDING ADMISSION**
**PRO HAEC VICE**
Dean Boland 0065693
18123 Sloane Avenue
Lakewood, Ohio 44107
216-529-9371 ph
866-455-1267 fax
dean@deanboland.com

CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that one true and correct copy of the foregoing has been furnished to the Edmund Falgowski, Esquire., U.S. Attorney's Office, 1007 Orange Street, Suite 700 , P.O. Box 2046, Wilmington, DE 19899-2046 by filing through the CF/ECM electronic filing system this 31st day of March, 2008.

/s/
_____

Clayton A. Sweeney, Jr.

